UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

ERNESTO LOPEZ, individually and on
behalf of all others similarly situated,

    Plaintiff,

v.

SIXT RENT-A-CAR, LLC.

    Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Ernesto Lopez ("Plaintiff") brings this action, on behalf of himself and all others similarly situated in Florida and Nationwide, against Sixt Rent-A-Car, LLC ("Sixt"), for damages and other relief, and states:

## INTRODUCTION

1. This concerns the business practices of the Defendant Sixt, whereby Sixt has extracted millions of additional dollars from consumers, through an unfair and deceptive self-enrichment scheme. Sixt obtained a "Supplemental Liability Excess Policy" ("SLI Policy") from insurers, for sale to individual renters at sums far in excess of the actual amounts remitted to those insurers by Sixt following sale of an SLI Policy to a renter. The premiums paid by renters to Sixt and not remitted to the carriers constitute an undisclosed profit for Sixt.

2. Sixt's representations regarding the premium charged for the SLI Policy creates in a reasonable consumer the false impression that the charge for the SLI Policy is passed through to the insurance company and used solely to pay for SLI for the benefit of the renter. In truth, Sixt secures that insurance through group policies for a fraction of the cost charged to the consumer and pockets nearly all of the charge paid by the renter. The result is that Sixt generates substantial

profits from its customers' purchases of insurance policies through undisclosed and unfair charges.

3. Sixt's conduct alleged herein is a systematic pattern of conduct to defraud consumers and increase revenues. The deceptive conduct emanates from Sixt's headquarters in Ft. Lauderdale, Florida from where the scheme and the associated representations were designed, marketed and distributed.

4. Sixt's sale of the SLI is objectively likely to deceive any reasonable consumer into believing the charge for the SLI reflects the cost of the insurance coverage being passed through to that insurer. *See Bowe v. Public Storage*, 106 F. Supp. 3d 1252, 1258-59, 1270 (S.D. Fla. 2015) (concluding that a reasonable factfinder could find it was a deceptive practice for Public Storage to represent that the premiums would be "passed through to the insurance company and then secretly retaining a portion of the insurance premiums for itself").

5. Florida courts have consistently found this sort of a deceptive hidden retention actionable under the Florida Deceptive and Unfair Trade Practices Act, §501.201, *et seq.*, Florida Statutes ("FDUTPA") and actionable as a breach of contract; *Bowe*, 106 F. Supp. 3d at 1270 (FDUTPA); *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1362, 1366-67 (S.D. Fla. 2018) (actionable FDUTPA and breach of contract claims alleged where the defendant's representations could leave a reasonable consumer with the net impression of a pass-through charge); *Maor v. Dollar Thrifting Auto. Grp., Inc.* 303 F. Supp. 3d 1320, 1324 (S.D. Fla. 2017 (same); *accord Harrison v. Lee Auto Holdings, Inc.*, 295 So.3d 857 (Fla. 1st DCA 2020) (actionable FDUTPA claim presented by representing that electronic filing fee for title and registration was a pass-through charge payable to government or third-party vendor); *Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699 (Fla. 3d DCA 2000) (actionable FDUTPA claim stated against cruise line that secretly retained a portion of funds collected from consumers as port charges).

6. In addition to violating the FDUTPA, Sixt has breached its contract by overcharging the cost of SLI and violating the covenant of good faith and fair dealing; Sixt has fraudulently misrepresented the price of the SLI Policies, for which Sixt is liable; and Sixt has been unjustly enriched. Plaintiff accordingly asserts his claims on behalf of himself, a nationwide class and a subclass of all similarly situated Florida residents.

## PARTIES

7. The Plaintiff Ernesto Lopez is domiciled in Seminole County, Florida and is thus a citizen of the State of Florida.

8. Defendant, Sixt Rent A Car, LLC, is a Delaware corporation and U.S. based subsidiary of its parent company Sixt S.E. Sixt Rent A Car, LLC is the primary entity responsible for Sixt's U.S. vehicle rental operations, and is headquartered in Fort Lauderdale, Florida. Sixt is thus a citizen of both Delaware and Florida.

9. This Court possesses jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A) because (a) the Plaintiff is a member of the putative classes consisting of at least 100 members; (b) a member of the class of Plaintiffs is a citizen of a state different from the Defendant; (c) the amount - in - controversy is in excess $5 million exclusive of interest and costs; and (d) none of the exceptions under §1332 apply to this claim.

10. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391 because a substantial portion of the acts and course of conduct giving rise to the claims occurred within this District, and under 18 U.S.C. §1965(a), because the Defendants are subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

11. Plaintiff and Class members agreed to rent vehicles from Sixt for a daily market

3

rate plus applicable car and sales taxes.

12. Plaintiff and Class members also agreed to purchase SLI in the form of money consideration in exchange for Sixt's promise to provide an SLI Policy issued by third-party insurance carriers.

13. The SLI product is presented by Sixt as a separate insurance product sold by third-party insurance companies for a premium rate.

14. Based on Sixt's presentation of the insurance, it is reasonable for consumers to believe that the SLI premium rate was passed through completely to the third-party insurance company and not retained by Sixt as additional profit.

15. For example, each renter who purchases SLI is to be provided with a copy of an insurance brochure explaining the SLI coverages. The brochures state that the SLI is provided by third-party insurance companies and expressly state that the SLI is underwritten by the third-party insurance companies. The brochures explain that the insurance company, not Sixt, will indemnify the renter for loss related to liability for bodily injury and property damage. There is no indication that Sixt would retain a significant portion of the premiums paid for the SLI.

16. The rental contracts and invoices for the rentals denote the SLI as a separate line item, sold at a separate price, from the rental car price. The rental contracts and invoices label the SLI product as exempt from both rental car tax and sales tax, suggesting that the premium paid by the customer is not an additional charge for the rental vehicle, which is subject to both sales tax and rental car tax.

17. Customers are never informed that Sixt retains most of the premium paid for the SLI. The totality of the circumstances leaves the reasonable impression in the consumer that the SLI charges would be passed through to the insurance company, when in fact, most of the premium is used by Sixt as an untaxed and undisclosed profit for Sixt.

18.     Nevertheless, every time a customer elects to purchase SLI, Sixt retains a substantial share of the daily premium paid by the consumer. Sixt's share of these insurance premiums generates substantial revenues and profits for the company.

19.     From Florida, Plaintiff Ernesto Lopez reserved the rental of a Sixt vehicle in Denver, Colorado, from April 12, through April 14, 2019. Plaintiff Lopez agreed to rent the vehicle for a daily rental rate of $43.58, for a total rental rate of $130.73, subject to a 3.5% rental car tax and a 9.25% sales tax. Plaintiff Lopez agreed to purchase SLI at a daily which he believed would be passed through completely to a third-party insurance company. In reality, Sixt remitted only a small fraction of the amount Lopez paid for the SLI to the insurance company for the purchase of SLI on Plaintiff Lopez's Colorado rental.

20.     From Florida, Plaintiff Lopez also reserved the rental of a Sixt vehicle in San Francisco, California from May 2 through May 5, 2019. Plaintiff Lopez agreed to rent this vehicle for a daily rental rate of $63.25, for a total of $126.50, subject to a 2% specific ownership tax and a 8.5% sales tax. Plaintiff Lopez agreed to purchase SLI as part of a package, which included SLI sold at a daily rate which he believed would be passed through completely to a third-party insurance company. In reality, Sixt remitted only a small fraction of the amount Lopez paid for the SLI to the insurance company for the purchase of SLI on Plaintiff Lopez's California rental.

21.     Because Sixt secreted from its customers its business practice of not remitting the full amount charged to renters for SLI coverage to the SLI carriers, Lopez was unaware of and did not discover until October of 2021, that Sixt had breached its aforementioned rental agreements with him and that he had been defrauded.

22.     Thus, for each of the aforementioned rentals, Lopez was charged amounts significantly in excess of the amounts Sixt represented to him as the cost of the insurance and significantly in excess of the amounts paid by Sixt to the SLI carriers for said insurance.

## CLASS ALLEGATIONS

23. Paragraphs 1-22 are hereby incorporated by reference.

24. This Complaint is brought as a class action pursuant to Fed R. Civ. P. 23(a), (b)(2) and (b)(3).

25. Plaintiffs brings this action on behalf of the following Classes:

> •All customers who rented a vehicle from Sixt in the U.S., who purchased SLI coverage, which insurance was sold at the rental counter price, and who have been adjudicated as not subject to arbitration or whose rental contracts did not include an arbitration provision ("National Class").

> •All Florida residents who rented a vehicle from Sixt who purchased SLI coverage which insurance was sold at the rental counter price, and who have been adjudicated as not subject to arbitration or whose rental contracts did not include an arbitration provision ("Florida Class").

26. Excluded from the Classes are the Defendant, its officers, employees, agents and affiliates ("excluded persons"), their subsidiaries, legal representatives, heirs, successors and assigns, and any of Plaintiff's counsel, their officers, employees, agents, legal representatives, heirs, successors, and assigns.

27. Plaintiff is informed and believe that the Classes of persons affected by Defendant's unlawful acts consist of tens of thousands of people and are so numerous that joinder of all Class Members is impracticable. Thus, the numerosity requirements under Rule 23(a)(1) are satisfied.

28. The unlawful business practices alleged herein were standardized, uniform practices employed by Defendant that resulted in unlawful and deceptive sales of SLI Policies to thousands of the putative National Class Members and Florida Class Members because Sixt collected and pocketed excess amounts paid by Plaintiff and Class Members for the SLI Policies. In doing so, Sixt deceptively, unfairly, and uniformly breached its contracts with all Class Members.

4894-0335-7262, v. 3

29. The Plaintiff Lopez is a member of the National Class and the Florida Class. His claims are typical of the claims of the Class Members, and he will fairly and adequately protect the interests of the Class Members. Plaintiff's interests are coincident with and not antagonistic to those of the other Class Members. Plaintiff is subject to the same material affirmative defenses and is asserting the same claims as all Class Members, such that Rule 23(a)(3) and (4) are satisfied.

30. The Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole pursuant to Rule 23(b)(2).

31. Pursuant to Rule 23(b)(3), the class action is superior to the other available methods for the fair and efficient adjudication of the controversy because, among other things, it is desirable to concentrate the litigation of the Class Members' claims in one forum since it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, damages suffered by individual Class Members may be small, their interest in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for them to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class-action.

32. There exist numerous common questions of law and fact in this action within the meaning of Fed. R. Civ. P. 23(a)(2), which predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3).

33. Common questions of law in fact include, but are not limited to:

    a. Whether Defendant Sixt materially breached contracts to procure SLI Policies based on the actual cost when the amount charged was not used for the designated purpose and was not based on the actual cost.

    b. Whether Defendant Sixt uniformly collects and charges a higher amount for

7

SLI coverage than that remitted to the SLI carriers.

c. Whether the aforementioned practice constitutes a violation of FDUTPA or a fraudulent misrepresentation.

34. Certification of the classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a. The questions of law and fact, common to members of the Classes predominate over any questions affecting an individual member.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

35. Certification of the Classes under Rule 23(b)(2) is also appropriate since Sixt has acted and refused to act on grounds generally applicable to the Classes by engaging in a common course of conduct of uniformly charging excess amounts to Plaintiff and the unnamed members of the Classes, thereby making appropriate final injunctive relief or declaratory relief with respect to the Classes as a whole.

## COUNT I:
## BREACH OF CONTRACT
## (On behalf of Florida Class)

36. Paragraphs 1 – 35 are hereby incorporated by reference.

37. Plaintiff and Class Members entered into rental contracts with Sixt, whereby Plaintiff and members of the Florida Class agreed to rent a vehicle at a daily market rate for use of the rental, plus applicable taxes.

38. Plaintiffs and Class Members agreed to pay premiums for the purchase of SLI, and Sixt agreed to collect premiums in an amount to be remitted to the SLI carriers.

39. Sixt represented the SLI as a product sold by third-party insurance companies and created the reasonable impression that the premium collected for the SLI would be completely

8

passed through to the insurance company.

40. In reality, Sixt retained well over 60% of the premium collected for the SLI and added that amount as undisclosed and untaxed profit for Sixt.

41. This is a breach of the contractually agreed-upon rental rate and a breach of the covenant of good faith and fair dealing.

42. Sixt collected sums in an amount higher than the amount Sixt represented as the cost of the insurance and the amount which Sixt represented would be remitted to the SLI carriers. Sixt's charging of a fee designated for the purchase of SLI, when the majority of the fee was not used for that purpose and was instead used by Sixt as additional profit for the rental, constitutes a breach of contract.

43. Because of Sixt's breach, Plaintiff and the members of the Florida Class suffered harm in the form of the excess cost of SLI coverage above that which was remitted by Sixt to the SLI carriers for said coverage.

44. Plaintiff and the putative members of the Florida Class are owed restitution of the excess premiums Sixt collected in breach of the rental contract.

## COUNT II:
## BREACH OF CONTRACT
## (On behalf of National Class)

45. Paragraphs 1 – 35 are hereby incorporated by reference.

46. Plaintiff and Class Members entered into rental contracts with Sixt, whereby Plaintiff and members of the National Class agreed to rent a vehicle at a daily market rate for use of the rental, plus applicable taxes.

47. Plaintiffs and Class Members agreed to pay premiums for the purchase of SLI, and

Sixt agreed to collect premiums in an amount to be remitted to the SLI carriers.

48. Sixt represented the SLI as a product sold by third-party insurance companies and created the reasonable impression that the premium collected for the SLI would be completely passed through to the insurance company.

49. In reality, Sixt retained most of the premium collected for the SLI and added that amount as undisclosed and untaxed profit for Sixt.

50. This is a breach of the contractually agreed-upon rental rate and a breach of the covenant of good faith and fair dealing.

51. Sixt collected sums in an amount higher than the amount Sixt represented as the cost of the insurance and the amount which Sixt represented would be remitted to the SLI carriers. Sixt's charging of a fee designated for the purchase of SLI, when the majority of the fee was not used for that purpose and was instead used by Sixt as additional profit for the rental, constitutes a breach of contract.

52. Because of Sixt's breach, Plaintiff and the members of the National Class suffered harm in the form of the excess cost of SLI coverage above that which was remitted by Sixt to the SLI carriers for said coverage.

53. Plaintiff and the putative members of the National Class are owed restitution of the excess premiums Sixt collected in breach of the rental contract.

**COUNT III**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (On behalf of Florida Class)**

54. Paragraphs 1 – 35 are hereby incorporated by reference.

55. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Section 501.201, Fla. Stat., *et seq*. ("FDUTPA"). The stated purpose of the FDUTPA

is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

56. Plaintiff and Class Members are consumers as defined by Section 501.203, Fla. Stat. Sixt is engaged in a trade or commerce within the meaning of the FDUTPA.

57. Florida Statute Section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

58. Sixt's unfair and deceptive practices as described herein are objectively likely to mislead – and have misled – consumers acting reasonably in the circumstances.

59. Sixt has violated the FDUTPA by engaging in unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

60. Plaintiff and consumers in the Florida Class have been aggrieved by Sixt's unfair and deceptive practices and acts of false advertising because in paying the cost of the SLI Policies sold by Sixt in connection with the rental of a Sixt vehicle, Plaintiff and the Class Members have parted with money under the false pretense that the sums paid for the SLI coverage represented the costs of the coverage remitted to the SLI carriers.

61. The harm suffered by Plaintiff and consumers in the Florida Class was directly and proximately caused by the deceptive and unfair practices of Sixt, as more fully described herein.

62. Pursuant to §501.211(2) and §501.2105 Fla. Stat., Plaintiff and consumers in the Florida Class make claims for actual damages, attorneys' fees and costs.

63. Sixt still utilizes many of the deceptive acts and practices described herein and is still secretly retaining money from every SLI Policy it sells. Plaintiff and other Members of the

11

Classes have suffered and will continue to suffer irreparable harm if Sixt continues to engage in such deceptive, unfair and unreasonable practices. Section 501.211(1) entitles Plaintiff and the Classes to obtain both declaratory or injunctive relief to put an end to Sixt's unfair and deceptive scheme.

## COUNT IV
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (On behalf of National Class)

64. Paragraphs 1 – 35 are hereby incorporated by reference.

65. This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Section 501.201, Fla. Stat., *et seq*. ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

66. Plaintiff and Class Members are consumers as defined by Section 501.203, Fla. Stat. Sixt is engaged in a trade or commerce within the meaning of the FDUTPA.

67. Florida Statute Section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

68. Sixt's unfair and deceptive practices as described herein are objectively likely to mislead – and have misled – consumers acting reasonably in the circumstances.

69. Sixt has violated the FDUTPA by engaging in unfair and deceptive practices as described herein, from within Florida, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers. The deceptive conduct emanates from Sixt's headquarters in Ft. Lauderdale, Florida from where the scheme and the associated representations

were designed, marketed and distributed.

70. Plaintiff and consumers in the National Class have been aggrieved by Sixt's unfair and deceptive practices and acts of false advertising because in paying the cost of the SLI Policies sold by Sixt in connection with the rental of a Sixt vehicle, Plaintiff and the Class Members have parted with money under the false pretense that the sums paid for the SLI coverage represented the costs of the coverage remitted to the SLI carriers.

71. The harm suffered by Plaintiff and consumers in the National Class was directly and proximately caused by the deceptive and unfair practices of Sixt, as more fully described herein.

72. Pursuant to §501.211(2) and §501.2105 Fla. Stat., Plaintiff and consumers in the Florida Class make claims for actual damages, attorneys' fees and costs.

73. Sixt still utilizes many of the deceptive acts and practices described herein and is still secretly retaining money from every SLI Policy it sells. Plaintiff and other Members of the National Class have suffered and will continue to suffer irreparable harm if Sixt continues to engage in such deceptive, unfair and unreasonable practices. Section 501.211(1) entitles Plaintiff and the National Class to obtain both declaratory or injunctive relief to put an end to Sixt's unfair and deceptive scheme.

<u>**COUNT V**</u>
<u>**FRAUDULENT MISREPRESENTATION AGAINST SIXT**</u>
**(On Behalf of Florida Class)**

74. Paragraphs 1-35 are hereby incorporated by reference.

75. Sixt's deceptive practices as described herein of fraudulently misrepresenting the premium rates for the SLI Policies constitutes a fraudulent misrepresentation.

76. In misrepresenting the true costs of the SLI policies sold, Sixt knowingly made

false statement of material fact with the intention that Plaintiffs and the Class Members purchase the SLI policies at that price and Plaintiff and the Class Members acted in reliance on the misrepresentation by purchasing SLI policies.

77. The harm suffered by Plaintiff and the Class Members was directly and proximately caused by the fraudulent misrepresentations of Sixt, more fully described herein.

### COUNT V
### FRAUDULENT MISREPRESENTATION AGAINST SIXT
### (On Behalf of National Class)

78. Paragraphs 1-35 are hereby incorporated by reference.

79. Sixt's deceptive practices as described herein of fraudulently misrepresenting the premium rates for the SLI Policies constitutes a fraudulent misrepresentation.

80. In misrepresenting the true costs of the SLI policies sold, Sixt knowingly made false statement of material fact with the intention that Plaintiffs and the Class Members purchase the SLI policies at that price and Plaintiff and the Class Members acted in reliance on the misrepresentation by purchasing SLI policies.

81. The harm suffered by Plaintiff and the Class Members was directly and proximately caused by the fraudulent misrepresentations of Sixt, more fully described herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment on behalf of themselves and the Classes:

A. Certifying the Classes as requested herein;

B. Awarding actual, direct and compensatory damages;

C. Awarding restitution and disgorgement of revenues if warranted;

D. Awarding declaratory relief as permitted by law or equity, including declaring Sixt's practices as set forth herein to be unlawful;

E. Awarding injunctive relief as permitted by law or equity, including

4894-0335-7262, v. 3

enjoining Sixt from continuing those unlawful practices as set forth herein, and directing Sixt to identify, with Court supervision, victims of its conduct and pay them all money as required to pay;

F.     Awarding statutory damages, as appropriate;

G.     Awarding attorneys' fees and costs; and

H.     Providing such further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: February 14, 2023

Respectfully submitted:

*/s/ Amy L. Judkins*
Amy L. Judkins
Florida Bar No.: 125046
Edmund A. Normand
Florida Bar No.: 865590
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, Florida 32803
Tel: 407-603-6031
E-Mail: amy.judkins@normandpllc.com
E-Mail: ed@normandpllc.com
E-Mail: ean@normandpllc.com

Christopher J. Lynch, Esq.
Florida Bar No.: 331041
**CHRISTOPHER J. LYNCH, P.A.**
6915 Red Road, Ste. 208
Coral Gables, FL 33143
Tel: 312.967.3653
E-mail: clynch@hunterlynchlaw.com
E-mail: lmartinez@hunterlynchlaw.com

***Attorneys for Plaintiff***

4894-0335-7262, v. 3